UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA MURRY-ZIZI,

    Plaintiff,

v.                                                                   Case No. 13-12783
                                                                   HON. AVERN COHN

JEH JOHNSON, Secretary,
U.S. Department of Homeland Security,

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (Doc. 13)**

### I. INTRODUCTION

This is an employment discrimination case. Plaintiff Theresa Murray-Zizi (Plaintiff) is suing Jeh Johnson, Secretary of the U.S. Department of Homeland Security (Defendant). She claims that Defendant subjected her to race discrimination, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et. seq. In addition, Plaintiff claims that Defendant discriminated against her on the basis of her age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621. Plaintiff's Complaint is in four counts:

    **COUNT I:**    Race discrimination under Title VII
    **COUNT II:**   Gender discrimination under Title VII
    **COUNT III:**  Retaliation under Title VII
    **COUNT IV:**  Age discrimination under the ADEA

Now before the Court is Defendant's Motion for Summary Judgment. (Doc. 13) For the reasons that follow, Defendant's Motion will be granted.

## II. BACKGROUND[1]

### A. Plaintiff's Employment History

Plaintiff is African American. She was hired by the Transportation Security Administration (TSA) in February 2011. From February 27, 2011 until her resignation three months later on May 27, 2011, she worked as a Transportation Security Officer (TSO) at the Detroit Metropolitan Wayne County Airport in Romulus, Michigan.

Every new employee at TSA must serve a basic trial period, at any point during which a supervisor may terminate an employee whose performance or conduct is not acceptable. As a new employee, Plaintiff was required to successfully complete the TSO training program, which includes both classroom and on-the-job training (OJT). Failure to complete mandatory training and become certified as a TSO results in termination.

As of May 4, 2011, Plaintiff failed to complete her OJT as well as a mandatory passenger screening assessment, both of which are required for TSO certification. On April 9, 2011, Plaintiff was given a Memorandum of Counseling (an official workplace reprimand letter) for independently checking a flight attendant through a scanner without supervision. On April 10, 2011, Plaintiff was given a second Memorandum of Counseling for discussing TSA matters in the presence of a passenger. In addition, she was criticized for not conducting an appropriate pat down, and was found unprepared to take an imaging test based on her practice scores.

Plaintiff was advised that she could continue OJT until May 26, 2011, at which

---

[1] The background of the case is taken from Defendant's Statement of Undisputed Material Facts. Plaintiff did not file a counter statement of material facts as per the Court's motion practice guidelines.

2

time her training progress would be reviewed. On May 27, 2011, the TSA was prepared to terminate her employment because of her inability to pass the OJT portion of her training requirement. That same day, Plaintiff resigned in lieu of being terminated.

### B. Discriminatory Conduct Claimed by Plaintiff

During the time she was employed at the TSA, Plaintiff says that she was subjected to the following discriminatory conduct:

- On March 11, 2011, a Caucasian training instructor called her husband a "DAN a--hole" when he was late to pick up Plaintiff from work. Plaintiff says "DAN" stands for "dumb a-s n---r."

- On March 12, 2011, her training files were missing from the computer she was working on. No other students had this problem.

- On an unspecified date, an African American supervisor asked Plaintiff about her career goals in a hostile and derisive tone.

- On May 4, 2011, Plaintiff was wrongly criticized for failing to properly perform a pat down and not allowed to take an imaging test.

- On May 11, 2011, Plaintiff reviewed written comments and learned that her monitor had made "baseless and insulting comments" about her.

- On an unspecified date, a supervisor told Plaintiff that she should "want to be like" a Caucasian person the supervisor had named.

- On May 20, 2011, she was given an unfair test and not allowed to discuss her results with the training department.

### C. Procedural History

On January 24, 2012, Plaintiff filed a formal Equal Employment Opportunity (EEO) complaint of discrimination based on race (African-American), color (light skinned), national origin (association with her husband who is Haitian), sex (female) and age (birth year: 1970). Plaintiff did not include allegations related to any workplace

3

retaliation, nor did she later petition to have a claim of retaliation included in her EEO complaint. On March 26, 2013, the administrative proceeding concluded, finding that Plaintiff failed to prove discrimination. On June 24, 2013, Plaintiff filed the instant suit.

### III. STANDARD OF REVIEW

The summary judgment standard of review under Fed. R. Civ. P. 56 is well known and not repeated here. Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. of Ed.*, 286 F.3d 366, 370 (6th Cir. 2002).

### IV. DISCUSSION

#### A. Plaintiff's Circumstantial Evidence Discrimination Claims

In its motion for summary judgment, Defendant argues that Plaintiff's circumstantial evidence discrimination claims fail because Plaintiff cannot establish a prima facie case, nor can she show that Defendant's reason for termination were pretextual.

**1.**

A plaintiff may establish a Title VII or ADEA claim by direct or circumstantial evidence. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544 (6th Cir. 2004). When considering claims based on circumstantial evidence, federal courts apply a three-step legal analysis. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. Once this is established, the burden

4

of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008). Finally, the burden shifts back to the plaintiff to show that nondiscriminatory explanation is a mere pretext for intentional discrimination. *Id.* The Sixth Circuit applies the same three-step analysis to age discrimination claims brought under the ADEA. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

To establish a prima facie case of race, gender, and age discrimination a plaintiff must show that she (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position; and (4) was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)).

**2.**

Defendant says that Plaintiff fails the third and fourth requirements of the prima facie case: that she cannot demonstrate (1) that she was qualified for the TSO position; or (2) that she was treated less favorably than other similarly-situated, non-protected employees. Because Defendant's first argument is dispositive, the Court will not address whether Plaintiff was treated less favorably than other comparable employees.

For a plaintiff to show that she is qualified for a position, she "must show that she was performing at a level which met defendant's legitimate expectations." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 929 (6th Cir. 1999). "When assessing whether a plaintiff has met her employer's legitimate expectations at

the prima facie stage . . . a court must examine plaintiff's evidence independent of the nondiscriminatory reason produced by the defense. . ." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002).

Here, Plaintiff's employment history shows that Plaintiff was unable to complete the OJT portion of her training program and that she was on two occasions reprimanded for improper conduct. Regardless of whether she was initially qualified to begin the TSO training program, these repeated problems demonstrate that Plaintiff was not qualified to become certified as a TSO—ultimately resulting in her termination.

Because Plaintiff cannot show that she was qualified to continue in the TSO position, she fails establish a prima facie case of race, gender, or age discrimination.[2]

### B. Plaintiff's Retaliation Claim

Next, Defendant argues that Plaintiff's retaliation claims must fail for two reasons. First, Defendant argues that Plaintiff's retaliation claim must be dismissed because Plaintiff failed to exhaust her administrative remedies. Second, Defendant says that Plaintiff fails to establish a prima facie retaliation claim. Defendant's first argument is meritorious.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). This requirement serves the "dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as

---

[2] Significantly, Plaintiff's response brief makes no arguments with respect to her prima facie circumstantial evidence discrimination claim. (See Doc. 15)

affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Id.* (citing *Alexander*, 415 U.S. at 44). Here, Plaintiff's retaliation claim should have been raised at the administrative proceeding. However, Plaintiff neither included claims related to "Retaliation/Reprisal" in her initial complaint (See Doc. 13, Ex. 2 at 2), nor did she later attempt to include such claims by petition despite making other amendments to her complaint. (See Doc. 13, Ex. 3 at 4-5). Plaintiff's retaliation claim must therefore be dismissed for failure to exhaust administrative remedies.[3]

## C. Plaintiff's Hostile Work Environment Claim

Finally, Defendant argues that Plaintiff cannot establish a prima facie case of hostile work environment discrimination.

### 1.

To establish a prima facie case of hostile work environment, the plaintiff must establish the following five factors: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was caused by discrimination against plaintiff's protected class; (4) the harassment had the effect of unreasonably interfering with plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) there exists some basis for liability on the part of the employer. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

To satisfy the third prong, the plaintiff must show that the unwelcome harassment was "based on race." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)

---

[3] Here as well, Plaintiff's response brief makes no arguments with respect to the failure to exhaust her retaliation claims. (See Doc. 15)

("[O]nly harassment *based on the plaintiff's race* may be considered."). This may be proved "by either (1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace." *Id.* (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998).

Further, to satisfy the "offensive work environment" prong, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In the Sixth Circuit, the conduct must be "severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000)).

**2.**

Defendant first argues that the incidents complained of were not based on discriminatory intent. Indeed, with the exception of one incident, none of the incidents described by Plaintiff were "based on" her race.

Plaintiff says that training files were missing from her computer; an African American supervisor asked Plaintiff about her career goals in a "hostile and derisive tone"; a training monitor made "baseless and insulting comments" about her; a supervisor told her she should "want to be like" a fellow trainee who happens to be

8

Caucasian; and she was asked to complete an "unfair" IED drill. Plaintiff believes these occurrences happened to her because she is African American. However, Plaintiff can point to no direct evidence demonstrating that these incidents were based on her race. Nor can she show that she was singled out compared to other Caucasian trainees, or that the incidents implicated race in any way. Finally, Plaintiff cannot demonstrate that each of these incidents were the result of intentional acts by TSA.[4]

**3.**

At most, only one incident described by Plaintiff was "based on race": when a Caucasian training instructor called Plaintiff's husband a "DAN a--hole" when he was late to pick up Plaintiff from work. Defendant argues that this isolated incident does not amount to a "severe and pervasive" discriminatory work environment. This argument has merit.

The Sixth Circuit has held that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment and that conduct must be extreme to amount to a change in the terms and conditions of employment." *Kuhn v. Washtenaw Cnty.,* 709 F.3d 612, 627 (6th Cir. 2013) (quoting *Hafford v. Seidner*, 183 F.3d 506, 512-13 (6th Cir. 1999)). In *Williams v. CSX Transp. Co., Inc.*, the Sixth Circuit affirmed the district court's grant of judgment as a matter of law denying the plaintiff's claim of hostile work environment based on race because the alleged racist statements, substantially occurring over a two-day period, were not

---

[4] Plaintiff says that she was the only student who was missing computer files; therefore she was "treated differently" than others. However, Plaintiff provides no evidence that this was an intentional act. Similarly, Plaintiff says that an IED drill was "unfair" because she was the only trainee to be asked to search for a mock detonator. However, Defendant explains that these drills were randomly selected.

sufficiently severe or pervasive. 643 F.3d 502, 513 (6th Cir. 2011) ("Although despicable, [the supervisor's] alleged racist statements are not sufficiently 'severe' or 'pervasive' standing alone to create a jury question on [plaintiff's] racially hostile work environment claim.")

Here, Plaintiff can only allege a single, isolated, discriminatory statement by her training supervisor. This does not rise to a level of harassment that is sufficiently severe or pervasive to support a hostile work environment claim.

### V. CONCLUSION

For the above reasons, Defendant's Motion for Summary is GRANTED. This case is DISMISSED.

SO ORDERED.


Dated: February 18, 2015         s/Avern Cohn                    
                                 AVERN COHN
                                 UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 18, 2015, by electronic and/or ordinary mail.

                                  s/Sakne Chami   
                                 Case Manager
                                 (313) 234-5160